IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

GEOFFREY ASHER,                          :
                                         :
        Plaintiff,                       :
                                         :          CIVIL ACTION
vs.                                      :          NO. 2:08-CV-035-WCO
                                         :
MARK McCLURE, Sheriff of                 :
Lumpkin County, Georgia;                 :
Sergeant Curt Donaldson; Lieutenant      :
Ryan Miller; Investigator Ben Nix;       :
Deputy Sterling Cole, of the             :
Lumpkin County Sheriff's                 :
Department, in their individual          :
capacities,                              :
                                         :
        Defendants.                      :

## ORDER

The captioned case is before the court for consideration of "Defendants'

Motion for Summary Judgment" [40-1].

### I.      Factual Background and Procedural History[1]

On the afternoon of April 30, 2006, plaintiff was traveling home on or

near Emory Stephens Road in Lumpkin County, Georgia.  Some distance

behind him was defendant Deputy Sterling Cole ("defendant Cole"), traveling

---

[1] The facts here are culled from the pleadings, from both defendants' and plaintiff's statements of facts attached to the briefs on summary judgment, and from attachments thereto. The facts are undisputed unless otherwise noted.

in a marked patrol car without audible siren activated.[2]   Upon arriving at plaintiff's residence, plaintiff got out of his truck and went into an outside shed on the property, and defendant Cole parked behind plaintiff's vehicle on the grass.  In addition to plaintiff's truck, a Corvette was parked outside plaintiff's residence.

Defendant Cole shouted to plaintiff in an initially unsuccessful attempt to get plaintiff's attention.  When plaintiff exited the shed shortly thereafter and began to approach defendant Cole's vehicle, defendant Cole pointed his handgun at plaintiff and ordered plaintiff onto the ground.  Plaintiff repeatedly refused to get on the ground and objected to having a gun pointed at him on his property.  During this initial confrontation between plaintiff and defendant Cole, plaintiff returned to his truck at least three times, twice opening a door to the passenger compartment and rummaging inside.  Several minutes into his confrontation with defendant Cole, plaintiff announced that he was going into his residence to get a Coke.  Despite defendant Cole's orders to remain outside, plaintiff entered his residence.  Plaintiff emerged less than a minute later without a Coke.

_____

[2]  It is disputed whether the blue lights were running on defendant Cole's patrol car at the time.  Defendant Cole asserts that plaintiff was traveling at a speed of 73 miles per hour in an area where the speed limit was 55 miles per hour and that he was attempting to conduct a traffic stop.

At some point later in the afternoon, Sheriff Mark McClure ("defendant McClure"), Deputy Melvin Murphy, Sergeant Curt Donaldson ("defendant Donaldson"), Deputy Jason Canupp, Deputy Shon Atkins, Captain Jason Stover, Lieutenant Ryan Miller ("defendant Miller"), Investigator Ben Nix ("defendant Nix"), and Lieutenant Matthew Hester arrived on the scene. When defendant Donaldson arrived, he ordered plaintiff onto his knees,[3] and plaintiff was then placed into handcuffs. Deputy Atkins then searched plaintiff and found no weapons on his person. Plaintiff was placed, still handcuffed, into the back of defendant Cole's patrol car.

Shortly after plaintiff's arrest, officers searched the pickup truck plaintiff had been driving. Therein, officers found five handguns, as well as ammunition.[4] Additionally, upon walking up to the outside shed on the property, defendant McClure saw "military type boxes, some of them labeled

---

[3] Unlike his earlier interactions with defendant Cole, plaintiff did comply promptly with orders to get on his knees once backup officers arrived at the scene. This is clear in the Dashcam video from defendant Cole's patrol car, submitted as Exhibit A to defendant Cole's declaration.

[4] The circumstances surrounding the discovery of these items are in dispute. Specifically, plaintiff points to the fact that defendant Cole has previously admitted that he did not personally discover the weapons in the truck but was told by others that the guns were found there. Defendant Cole saw the weapons at some point after their initial discovery when they were being photographed. (*See* Ex. 7 to Defs.' Mot. Summ. J. 37-38.)

3

either a rocket launcher, grenade launcher, something of that nature.  Some kind of launcher."  (Dep. of Mark McClure 45:11-14, Jan. 6, 2009.)

On defendant McClure's initiative, he and other officers then entered plaintiff's residence before a search warrant was obtained and conducted a search which defendants contend lasted approximately ten minutes.[5]  At some point later in the afternoon, defendant Miller apparently presented plaintiff with a consent form, which plaintiff refused to sign.  However, defendants McClure, Cole, Donaldson, and Nix contend that they understood from one or more other officers that plaintiff had given verbal consent to search the residence.  Defendants did search the residence.  Several hours later, at approximately 10:35 p.m., defendant Nix sought and obtained a search warrant for plaintiff's residence.

Although warrants that charged plaintiff with a number of crimes were issued a few days later, no indictment immediately followed.  In fact, twenty-two months passed.  Then, on February 19, 2008, plaintiff filed the present lawsuit under 42 U.S.C. § 1983, claiming that defendants violated his Fourth Amendment rights during their April 30, 2006 searches of his home and

---

[5]  As will be discussed herein, the timing regarding the search(es) of plaintiff's home is disputed.  Defendants contend that they exited the house following the initial ten minute search, while plaintiff insists that after their initial entry into the residence, defendants and other officers were continuously coming and going over the course of the next several hours.

4

vehicles.  Defendants answered the complaint and then in May 2008 moved to stay this action.  On June 10, 2008, a grand jury returned a seven-count indictment against plaintiff.  Accordingly, on July 16, 2008, the court granted defendants' motion to stay.

After the indictment, all misdemeanor charges against plaintiff were dismissed based upon a statute of limitations violation.  Plaintiff then filed a motion to suppress evidence as to the remaining charges based upon the same violations of constitutional rights alleged in this case.  Plaintiff's motion was granted by the Lumpkin County Superior Court, and all of the criminal charges against plaintiff were subsequently dismissed.  On April 17, 2009, this court lifted the stay, and discovery began.  Defendants filed the present motion for summary judgment on October 19, 2009.

## II.    Legal Standard

Summary judgment shall be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Only those claims for which there is no need for a factual determination and for which there is a clear

legal basis are properly disposed of through summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

It is well-settled that a court evaluating a summary judgment motion must view the evidence in the light most favorable to the non-movant. *See, e.g.*, *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988); *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986), *reh'g denied*, 815 F.2d 66 (11th Cir. 1987). To survive a motion for summary judgment, the non-moving party need only present evidence from which the trier of fact might return a verdict in his favor. *Samples*, 846 F.2d at 1330. However, Rule 56, "[b]y its very terms, . . . provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The materiality of facts is governed by the relevant substantive law in the case. *Id.* at 248. A dispute is genuine if the evidence is such that the factual issues "may reasonably be resolved in favor of either party." *Id.* at 250.

Consideration of a summary judgment motion does not lessen the burden on the non-moving party. The non-moving party still bears the burden of coming forth with sufficient evidence. *See Earley v. Champion Int'l Corp.*,

907 F.2d 1077, 1080 (11th Cir. 1990). "If the non-movant in a summary judgment action fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the non-movant, summary judgment may be granted." *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1247 (11th Cir. 1999) (citation omitted).

### III.   Analysis

Defendants have moved for summary judgment on all claims *except* that defendant Miller has not moved for summary judgment on the claim that he entered plaintiff's residence without consent after he arrived on the scene–defendants note that plaintiff's testimony and defendant Miller's testimony conflict with regard to their discussion of consent. (Defs.' Br. Supp. Mot. Summ. J. 1; *see also* Pl.'s Compl. ¶ 17.) Accordingly, plaintiff's claim of a Fourth Amendment violation against defendant Miller based upon the search of plaintiff's home remains in this case regardless of the court's ruling on the present motion.

### A.   Qualified Immunity

Defendants' motion for summary judgment is based largely upon their argument that qualified immunity protects defendants from all claims in this case. (*See* Defs.' Br. Supp. Mot. Summ. J. 6-16.)

### 1.  Legal Standard

The doctrine of qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."   *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Lee v. Ferraro*, 284 F.3d 1188, 1193-94 (11th Cir. 2002) (quotations omitted) ("Qualified immunity offers 'complete protection for government officials sued in their individual capacities as long as 'their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.''"); *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002).

To be entitled to qualified immunity, defendants "must first prove that [they were] acting within the scope of [their] discretionary authority when the allegedly wrongful acts occurred."  *Vinyard*, 311 F.3d at 1346 (quoting *Lee*, 284 F.3d at 1194).  Once that has been established, the inquiry can proceed to the two part test set forth by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194 (2001).  *Vinyard*, 311 F.3d at 1346.  Under the *Saucier* test:

> First, a court must decide whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right. . . .  Second, if the plaintiff has satisfied this first step, the

court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.

*Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009) (quoting *Saucier*, 533 U.S. at 201) (citations omitted).[6]

"Whether a defendant is entitled to qualified immunity is a question of law, in other words, whether the law at the time of the incident was clearly established so that a reasonable person should have known that he was violating it." *Durruthy v. Pastor*, 351 F.3d 1080, 1087 (11th Cir. 2003). Thus, defendant government officials are entitled to qualified immunity unless their "conduct violated a clearly established constitutional right." *Pearson*, 129 S. Ct. at 816 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).[7]

## 2.  Analysis

The parties do not dispute that defendants were acting within the scope of their discretionary authority when the relevant events occurred.[8]

---

[6] The court notes that "the [two-step] *Saucier* protocol should not be regarded as mandatory in all cases." *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

[7] The Eleventh Circuit has observed that "if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009) (quoting *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926 (11th Cir. 2000) (quoting *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997) (per curiam))).

[8] Plaintiff's response in opposition to defendants' motion for summary judgment does not argue this point, but rather argues that defendants "are not entitled to qualified immunity, because the law prohibiting their conduct was clearly established in April 2006." (Pl.'s Br. Opp'n Defs.' Mot. Summ. J. 11.)

Accordingly, the court must consider first "whether the facts that . . plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right[,]" and second "if the plaintiff has satisfied this first step, . . . whether the right at issue was "clearly established" at the time of defendant's alleged misconduct." *Pearson*, 129 S. Ct. at 815-16 (quoting *Saucier*, 533 U.S. at 201) (citations omitted).

### a.    Search of Plaintiff's Truck

As stated above, there were two vehicles at plaintiff's residence on April 30, 2006: the pickup truck that plaintiff had been driving and a Corvette. After plaintiff was placed into custody, officers searched the pickup truck he had been driving, admittedly without consent or a warrant.  In his response opposing defendants' motion for summary judgment, plaintiff does not contest defendants' claim that they are entitled to qualified immunity as to the search of the pickup truck.  Plaintiff's only argument concerning a "vehicle search" relates to the Corvette.  (*See* Pl.'s Br. Opp'n Defs.' Mot. Summ. J. 23-24.)[9]

---

[9]  The only mention plaintiff makes of the pickup truck is a statement that plaintiff "never gave consent to any defendant or other government agent to enter or search his home, his truck or the Corvette." (Pl.'s Br. Opp'n Defs.' Mot. Summ. J. 8.)  It is undisputed that the search of the pickup truck was without consent.  However, plaintiff does not contest that defendants are entitled to qualified immunity as to that search.

This court has previously held that "a party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed."  *Kramer v. Gwinnett County, Ga.*, 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004) (Evans, J.).

Accordingly, defendants' claim that they are entitled to qualified immunity as to the search of plaintiff's pickup truck is unopposed.

The court agrees that defendants are entitled to qualified immunity as to the search of plaintiff's pickup truck and bases this finding upon the first step of the *Pearson* inquiry. That is, the facts as alleged by plaintiff with regard to the search of the pickup truck do not make out a violation of a constitutional right.

After plaintiff was arrested, officers were entitled to search the pickup truck plaintiff had been driving. *See Thornton v. United States*, 541 U.S. 615, 619 (2004) (holding that a police officer may search the passenger compartment of an automobile following the lawful custodial arrest of an occupant of said automobile as a contemporaneous incident of arrest, even when the officer does not make contact until the occupant has left the vehicle).[10] The Supreme Court has held that "[o]nce an officer determines that there is probable cause to make an arrest, it is reasonable to allow officers to

---

[10] The court notes that the search of plaintiff's truck was not authorized under current law as a search incident to arrest, as the Supreme Court has held "that the *Chimel* [*v. California*, 395 U.S. 752 (1969)] rationale authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Arizona v. Gant*, 129 S. Ct. 1710, 1719 (2009). Plaintiff in this case was handcuffed in the back of a patrol car and was thus certainly secured and not within reaching distance of the passenger compartment of his pickup truck.

ensure their safety and to preserve evidence by searching the entire passenger compartment." *Id.* at 623.

The Court later clarified, however, that *New York v. Belton*, 453 U.S. 454 (1981), "and *Thornton* permit an officer to conduct a vehicle search when an arrestee is within reaching distance of the vehicle or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Arizona v. Gant*, 129 S. Ct. 1710, 1721 (2009). Thus, the Court explained, *Belton* should not be broadly construed "to allow vehicle searches incident to any arrest" as such a construction "would serve no purpose except to provide a police entitlement, and it is anathema to the Fourth Amendment to permit a warrantless search on that basis." *Id.* The Court in *Arizona v. Gant* also observed that "[o]ther established exceptions to the warrant requirement authorize a vehicle search under additional circumstances when safety or evidentiary concerns demand." *Id.* Among those, "[i]f there is probable cause to believe a vehicle contains evidence of criminal activity, *United States v. Ross* . . . authorizes a search of any area of the vehicle in which the evidence might be found. . . . *Ross* allows searches for evidence relevant to offenses other than the offense of arrest[.]" *Id.* (citing *Ross*, 456 U.S. 798, 820-21 (1982)). Collectively, the exceptions "ensure that officers may search a

vehicle when genuine safety or evidentiary concerns encountered during the arrest of a vehicle's recent occupant justify a search."  *Id.*

Though the Court in *Arizona v. Gant* plainly limited the construction of *Belton* in allowing vehicle searches incident to arrest, it noted that "[b]ecause a broad reading of *Belton* has been widely accepted, the doctrine of qualified immunity will shield officers from liability for searches conducted in reasonable reliance on that understanding."  *Id.* at 1723 n.11.

Defendants in this case were faced with a situation in which plaintiff had been uncooperative with the first officer on the scene, had refused to obey that officer's orders, and had entered his residence and outside shed, as well as returned to his vehicle and rummaged inside the passenger compartment, prior to his arrest when other officers arrived.  After plaintiff was arrested, the officers "began looking in the vehicle and searching this vehicle incident to an arrest."  (Dep. of Mark McClure 44:12-13.)  It is clear that defendants were relying on their understanding that the vehicle could be searched incident to

13

plaintiff's arrest, and defendants are entitled to qualified immunity as to that search. *See Gant*, 129 S. Ct. at 1723 n.11.[11]

### b. Search of Plaintiff's Residence

The facts as set forth by defendants divide the searches of plaintiff's residence into several distinct time periods. First, following plaintiff's arrest, defendants assert that "[o]n Sheriff McClure's initiative [d]efendants McClure, Cole and Donaldson entered the house to do a protective sweep." (Defs.' Statement of Material Facts ¶ 23; *see also* Decl. Sterling E. Cole Jr. ¶ 8; Decl. Curt Donaldson ¶ 4.) According to defendants, that protective sweep lasted no more than ten (10) minutes. (Decl. Curt Donaldson ¶ 4; Dep. of Mark McClure 54:13-55:1.) Then, there was a subsequent search of plaintiff's residence prior to a search warrant being issued. (Defs.' Statement of Material

---

[11] Even without the Supreme Court's finding in *Arizona v. Gant* that qualified immunity protects officers who reasonably relied on a broad interpretation of *Belton*, *see* 129 S. Ct. at 1723 n.11, the court finds that defendants would be entitled to qualified immunity.

It is not disputed that defendants were acting within the scope of their discretionary authority. The court finds that the facts as alleged by plaintiff do not make out a constitutional violation as to the search of his pickup truck. "If there is probable cause to believe a vehicle contains evidence of criminal activity, *United States v. Ross* . . . authorizes a search of any area of the vehicle in which the evidence might be found. " *Id.* at 1721 (citing *Ross*, 456 U.S. 798, 820-21 (1982)).

Here, given plaintiff's defiant behavior when confronted by defendant Cole, including returning to the pickup truck at least three times and twice rummaging inside the truck, the court finds that defendants had probable cause to search that vehicle. (*See* Ex. A (Dashcam Video) to Decl. Sterling E. Cole.)

Facts ¶¶ 31-39.)[12]  Later, at about 10:35 p.m., a search warrant was issued and the residence was then searched for a third time, this time under a warrant.  (*Id.* at ¶ 43.)

According to plaintiff, however, "from the point of the government's first entry into [p]laintiff's home without a warrant or consent, and during the time [p]laintiff was in handcuffed [sic] in a patrol car, the agents on scene, including [d]efendants McClure, Donaldson, Cole and Miller were *consistently and continuously* going in and out of [p]laintiff's home and vehicles *for a period of at least three hours*."  (Pl.'s Resp. Defs.' Statement of Uncontroverted Facts ¶ 23; *see also* Dep. of Geoffrey Asher 59:11-15, Sept. 2, 2009; Dep. of Wayne Grindle 10:19-11:18, Dec. 9, 2008; Mot. Hr'g Tr. 203, Dec. 19, 2008) (emphasis added).

_____

[12]  It is undisputed that plaintiff refused to sign a consent form allowing the search of his residence, but it is disputed by the parties whether plaintiff gave verbal consent.  Plaintiff insists that he never gave any consent to search, while defendants indicate that they were under the impression that plaintiff did give verbal consent.

Defendant Nix, for example, testified in Superior Court in Lumpkin County that while he didn't think plaintiff had signed the consent to search, he thought plaintiff "just basically said: Yeah, you all come on in.  And I think there was a verbal consent." (Prelim. Committal Hr'g Tr. 20, Nov. 27, 2007.)  Defendant Nix stated that Defendant Cole told him plaintiff had given consent to search.  (*Id.* at 21.)  Defendant McClure likewise indicated that officers obtained consent before re-entering the residence.  (Dep. of Mark McClure 62:12-16, Jan. 6, 2009.)  Defendant McClure indicated that either defendant Miller or Captain Jason Stover told him they had obtained consent from plaintiff.  (*Id.* at 62:21-63:2.)  Defendant Cole also indicated that he "was told by one or more deputies that Mr. Asher had provided consent to search the residence, after which other officers had begun searching."  (Decl. of Sterling E. Cole ¶ 9.)

The court is unable to find at this time that defendants are entitled to qualified immunity as to their search, or searches, of plaintiff's residence prior to obtaining a warrant at around 10:35 p.m. on the night of April 30, 2006.

As an initial matter, "[i]t goes without saying that the Fourth Amendment bars only unreasonable searches and seizures[.]" *Maryland v. Buie*, 494 U.S. 325, 331 (1990) (citing *Skinner v. Ry. Labor Execs.' Assn.*, 489 U.S. 602 (1989)).  In determining reasonableness, the Supreme Court has held that courts must balance "the intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests."  *Id.* "Under this test, a search of the house . . . is generally not reasonable without a warrant issued on probable cause."  *Id.*; *see also Holmes v. Kucynda*, 321 F.3d 1069, 1078 (11th Cir. 2003) ("A warrantless entry into a suspect's home is presumed to be an unreasonable violation of the Fourth Amendment.")

The court acknowledges that "[t]here are other contexts, however, where the public interest is such that neither a warrant nor probable cause is required."  *Buie*, 494 U.S. at 331.  For example, in *Maryland v. Buie* the Supreme Court held that when officers had arrested a suspect in his home, the officers were "permitted . . . to take reasonable steps to ensure their safety after, and while making, the arrest."  Thus, the Supreme Court held:

16

> as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

*Id.* at 334.  The Court emphasized that "such a protective sweep, aimed at protecting the arresting officers, if justified by the circumstances, is nevertheless not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found."  *Id.* at 335.  "The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises."  *Id.* at 335-36.

If the facts were clear that defendants entered plaintiff's residence for no more than ten (10) minutes immediately after plaintiff's arrest, the court might well be able to agree that defendants would be entitled to qualified immunity as to that protective sweep.  However, the evidence before the court does not allow that factual determination.

While defendants have presented sworn statements indicating that their protective sweep lasted no more than ten minutes (*see* Decl. Curt Donaldson

¶ 4; Dep. of Mark McClure 54:13-55:1), plaintiff has presented his own sworn statements and testimony, as well as those of neighbors and eyewitnesses, that "from the point of the government's first entry into [p]laintiff's home without a warrant or consent, and during the time [p]laintiff was in handcuffed [sic] in a patrol car, the agents on scene, including [d]efendants McClure, Donaldson, Cole and Miller were consistently and continuously going in and out of [p]laintiff's home and vehicles for a period of at least three hours."  (Pl.'s Resp. Defs.' Statement of Uncontroverted Facts ¶ 23; *see also* Dep. of Geoffrey Asher 59:11-15, Sept. 2, 2009; Dep. of Wayne Grindle 10:19-11:18, Dec. 9, 2008; Mot. Hr'g Tr. 203, Dec. 19, 2008).  Whether defendants ceased their initial search after ten minutes is a genuine issue of material fact.

As in this case, "when a defendant moves for summary judgment based on the doctrine of qualified immunity, the court must view the facts in the light most favorable to the plaintiff."  *Hartsfield v. Lemacks*, 50 F.3d 950, 951 (11th Cir. 1995) (quoting *Hardin v. Hayes*, 957 F.2d 845, 848 (11th Cir. 1992)).[13] The facts, as alleged by plaintiff, make out the violation of a constitutional right.  Moreover, the law is well established that: "It is a 'basic principle of

---

[13] If during the course of this litigation it becomes clear that the facts are not as plaintiff has presented them, defendants are free to reassert and the court is free to reconsider the defense of qualified immunity.

Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.'" *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (quoting *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (quotation omitted)); *Hartsfield*, 50 F.3d at 954 (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980) (finding that at the time of the incident at issue, "it was well-established as 'a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable'"). Indeed, "[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman v. United States*, 365 U.S. 505, 511 (1961). Thus, the facts as plaintiff has alleged them make out a violation of a *clearly established* constitutional right.

Defendants have argued that even if plaintiff did not actually consent to a search of his home, defendants McClure, Nix, Cole, and Donaldson are entitled to qualified immunity based upon their reasonable understanding from "fellow officer(s)" that plaintiff had given consent at some point during the afternoon. (Defs.' Br. Supp. Mot. Summ. J. 14.) Again, if the facts established that at some point prior to beginning a search, those defendants were told by a fellow officer that plaintiff had consented to a search, the court might well be

able to agree that said defendants are entitled to qualified immunity. However, the facts again do not allow this determination.

Defendants' contention is based upon defendants' version of the facts, which consists of an initial search they characterize as a protective sweep, followed by a completely separate, later search of the home, during which defendants McClure, Nix, Cole, and Donaldson believed plaintiff had given consent. As fully set forth above, these facts are hotly disputed by way of contradictory sworn testimony from the parties and witnesses.[14] Where, as here, the determination of factual issues turns on the credibility of entirely contradictory sworn testimony, the court cannot find that defendants are entitled to qualified immunity.

Insofar as defendants move for summary judgment based upon the argument that they are entitled to qualified immunity regarding the search(es) of plaintiff's residence, defendants' motion must be denied. The court reiterates that if, during the course of this litigation, the facts are shown to be

---

[14] Furthermore, the court notes that defendants appear unclear as to *who* told them plaintiff had consented. Defendant Nix, for example, indicated that defendant Cole told him plaintiff had given consent. (Prelim. Committal Hr'g Tr. 21, Nov. 27, 2007.) Defendant Cole, on the other hand, indicated that "one or more deputies" told him plaintiff had provided consent. (Decl. of Sterling E. Cole ¶ 9.) Defendant McClure stated that either defendant Miller or Captain Jason Stover told him they had obtained plaintiff's consent. (Dep. of Mark McClure 62:21-63:2.) Plaintiff, of course, insists that he never gave consent. (*See* Pl.'s Resp. Defs.' Statement of Uncontroverted Facts ¶ 38.)

different than the court presently views them, defendants may reassert, and the court can and will reconsider, the defense of qualified immunity.

### c.     Search of the Corvette

Although some evidence presented by defendants suggests that the Corvette was not even searched (*see* Dep. of Mark McClure 86:25-87:1 ("I don't recall anything about the Corvette even being searched.")), defendants' motion for summary judgment and brief thereon appear to concede that it was and proceed to argue that defendant McClure is entitled to summary judgment on that claim.

"While it is true that the Fourth Amendment generally requires law enforcement officials to obtain a warrant before conducting a search, there is what has become known as the automobile exception to the warrant requirement."  *United States v. Watts*, 329 F.3d 1282, 1284 (11th Cir. 2003) (per curiam); *see also United States v. Tamari*, 454 F.3d 1259, 1261 (11th Cir. 2006).  The Supreme Court has plainly held that "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more." *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam) (citing *California v. Carney*, 471 U.S. 386, 393 (1985)).   There is no separate

exigency requirement under this standard, as "the requirement of exigent circumstances is satisfied by the 'ready mobility' *inherent* in all automobiles that reasonably appear to be capable of functioning."  *Watts*, 329 F.3d at 1286 (quoting *United States v. Nixon*, 918 F.2d 895, 903 (11th Cir. 1990)) (emphasis in original).  Accordingly,

> there are only two questions that must be answered in the affirmative before authorities may conduct a warrantless search of an automobile.  The first is whether the automobile is readily mobile.  All that is necessary to satisfy this element is that the automobile is operational. . . .
>
> The second prong of the test, probable cause, is determined under the facts of each case.

*Id.* (citing *Nixon*, 918 F.2d at 903); *see also Tamari*, 454 F.3d at 1261.  Thus, a vehicle search will not violate the Fourth Amendment "where agents conduct a warrantless search, if the vehicle is operational and 'under the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found'' in the vehicle."  *Tamari*, 454 F.3d at 1262 (quoting *United States v. Goddard*, 312 F.3d 1360, 1363 (11th Cir. 2002) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983))).

The court cannot at this time find that defendants are entitled to qualified immunity as to the search of the Corvette.  While it appears in the parties' briefs on the issue of summary judgment that the parties do not contest that the

Corvette was searched at some point, the facts surrounding this particular search are sparse and disputed.  (*Compare* Dep. of Mark McClure 86:25-87:1 (stating that defendant McClure does not recall the Corvette being searched) *with* Dep. of Geoffrey Asher 59:16-24 (testifying that defendant McClure personally searched the Corvette).)

It is undisputed that defendant(s) were acting within the scope of their discretionary authority in searching the Corvette.  However, the facts as plaintiff has alleged them appear to make out the violation of a clearly established constitutional right.[15]  Plaintiff has alleged that at the time defendant McClure searched the Corvette plaintiff was handcuffed and secured in the back of a patrol car, multiple law enforcement officers were on the scene, and multiple law enforcement officers, including defendant McClure, had already spent between ten and twenty minutes inside plaintiff's residence. Law enforcement officials remained at plaintiff's residence throughout the evening, including while defendant Nix left to seek and obtain a search warrant covering both the residence and the vehicles *after* defendants had searched the residence and both vehicles.

---

[15]  The court notes again that if the facts, as they come to light during the course of this litigation, are different than the facts as alleged by plaintiff and considered here in the light most favorable to plaintiff, the issue of qualified immunity may be considered again. *See, e.g.*, *Kelly v. Curtis*, 21 F.3d 1544, 1546-47 (11th Cir. 1994).

Nothing in the facts suggests that the Corvette was not a functioning automobile and thus capable of mobility.  Thus, the exigency requirement for the automobile exception to the warrant requirement is met.  However, the court cannot stretch probable cause so far as to grant defendants qualified immunity here.  Where the plaintiff was in custody and the automobile was under the control of law enforcement officers who were able to remain on the scene even while a search warrant was later sought and obtained, the court cannot find sufficient probable cause to permit search of that vehicle prior to obtaining the warrant.  Defendants have set forth no reason–and the court cannot conceive of one under these facts–that a search warrant could not have been obtained prior to searching the Corvette.  Accordingly, the court finds that defendants are not entitled to qualified immunity as to the search of the Corvette.

> d.      *Defendant Nix's Search Warrant Application*

Plaintiff alleges that when defendant Nix sought and obtained a search warrant around 10:35 p.m. on April 30, 2006, "[t]he application in support of this search warrant contained information known by one or more defendants' [sic], including but not limited to Deputy Sterling Cole, Lieutenant Ryan

Miller and Sheriff Mark McClure, to be false." (Pl.'s Compl. ¶ 14.) Plaintiff

further asserts that:

> [T]he credibility of the [d]efendants' [sic] is in serious question
> given the inconsistencies between critical aspects of their story
> and the testimony of [p]laintiff or other civilian witnesses. As
> such, whether [d]efendant Nix even believed, or was even told,
> that [p]laintiff consented to a search of his home, as was
> represented to the reviewing magistrate when the search warrant
> application was made, is a matter for the jury.

(Pl.'s Br. Opp'n Defs.' Mot. Summ. J. 24.)

"The United States Supreme Court has held that qualified immunity

does not protect an officer who seeks a warrant where 'a reasonably well-

trained officer . . . would have known that his affidavit failed to establish

probable cause and that he should not have applied for the warrant.'" *Kelly v.

Curtis*, 21 F.3d 1544, 1553 (11th Cir. 1994) (quoting *Malley v. Briggs*,

475 U.S. 335, 345 (1986)) (citations omitted) (alteration in original). "The

Supreme Court has also held that the Constitution prohibits an officer from

making perjurious or recklessly false statements in support of a warrant." *Id.*

at 1554 (citing *Franks v. Delaware*, 438 U.S. 154, 156 (1978)). The same does

not apply, however, to "*negligent* misrepresentations or omissions." *Id.*

(emphasis in original).[16]  Similarly, the Eleventh Circuit has held that "a

---

[16] "Omissions that are not reckless, but are instead negligent . . . or insignificant and immaterial, will not invalidate a warrant. . . .  Indeed, even intentional or reckless omissions

warrant affidavit violates the Fourth Amendment when it contains omissions 'made intentionally or with a reckless disregard for the accuracy of the affidavit.'" *Madiwale v. Savaiko*, 117 F.3d 1321, 1326-27 (11th Cir. 1997) (quoting *United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980)) (footnote omitted).[17]

Plaintiff specifically asserts that the following information contained in the affidavit for search warrant is false:

> There is now located certain property and/or evidence namely: **Illegal weapons, explosive devices, narcotics, child**

---

will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause." *Madiwale v. Savaiko*, 117 F.3d 1321, 1327 (11th Cir. 1997)  (citations omitted).  In *Madiwale*, the Eleventh Circuit held that a police officer was entitled to qualified immunity on Fourth Amendment search warrant claims even where she had misstated and omitted material facts from the search warrant affidavit where the warrant was also premised on other statutes for which she did present adequate facts to establish arguable probable cause. *Id.*

[17]   Stated otherwise, the Eleventh Circuit has explained that:

> The Warrant Clause of the Fourth Amendment requires that warrant applications contain sufficient information to establish probable cause. . . . "[W]hen the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a *truthful* showing." . . . While this condition does not dictate that the statements be objectively accurate, it does require that they "be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." . . .  Thus, a police officer may be held liable under 42 U.S.C. § 1983 for submitting an application for an arrest warrant that contains false information.

*Holmes v. Kucynda*, 321 F.3d 1069, 1083 (11th Cir. 2003) (citations omitted) (2d alteration in original) (emphasis in original).  Thus, if a "reasonable police officer would have known" that testimony in the application was "not just negligently false, but recklessly so," the officer who filed the application will *not* be entitled to qualified immunity.  *Id.* (citation omitted).

> **pornography and any documentation, electronic or otherwise, related to the trade and/or sell of narcotics, firearms, and explosives.**

(Ex. 3 to Defs.' Mot. Summ. J.; *see also* Dep. of Geoffrey Asher 125:1-10.) Plaintiff states regarding facts contained in that paragraph, "I did have a couple of blasting caps, but that's it." (Dep. of Geoffrey Asher 125:12-13.) Plaintiff asserts that he did not have any illegal weapons, illegal narcotics, "kiddy porn," or "anything that related to the sale of narcotics or firearms or explosives." (*Id.* at 125:24-126:4.)

"Qualified immunity almost always protects a defendant when 'case law, in factual terms, has not staked out a bright line[,]'" and "the difference between 'reckless' and merely 'negligent' disregard for the truth is not crystal clear[.]" *Kelly*, 21 F.3d at 1554 (quoting *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993), *modified*, 14 F.3d 583 (11th Cir. 1994)). In this case, defendant Nix is protected by qualified immunity. Plaintiff has presented no evidence showing that defendant Nix made "perjurious or recklessly false statements" in his affidavit in support of the search warrant. Indeed, plaintiff has not directed the court's attention to any evidence that defendant Nix knew that any of his statements were false, or that such statements were, in fact, false. Accordingly, the court finds that defendant Nix

is entitled to qualified immunity as to plaintiff's claim based upon the search warrant affidavit.

### B.    Damages

In addition to arguing that they are entitled to qualified immunity, defendants seek summary judgment based on the argument that "plaintiff cannot recover damages flowing from criminal charges and the prosecution." (Defs.' Br. Supp. Mot. Summ. J. 16-20.)

"A § 1983 claim requires proof of an affirmative causal connection between the defendant's acts or omissions and the alleged constitutional deprivation." *Troupe v. Sarasota County, Fla.*, 419 F.3d 1160, 1165 (11th Cir. 2005) (citing *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986)). Thus, "[r]ecovery of damages is limited to those injuries proved to be caused by the defendants." *Id.* (citing *Whiting v. Traylor*, 85 F.3d 581, 586 n.10 (11th Cir. 1996) ("holding in a malicious-prosecution case against arresting officers that the chain of causation could be broken by the prosecutor")).

"The causal relation does not exist when the continuum between [d]efendant's action and the ultimate harm is occupied by the conduct of deliberative and autonomous decision-makers." *Id.* at 1166 (quoting *Dixon v. Burke County*, 303 F.3d 1271, 1275 (11th Cir. 2002)). Thus, on a false arrest

claim, the Eleventh Circuit has held that "[t]he intervening acts of the prosecutor in presenting the murder case to the grand jury and of the grand jury returning the indictment broke the chain of causation for any detention of [plaintiff] that followed the grand jury indictment." *Jones v. Cannon*, 174 F.3d 1271, 1287 (11th Cir. 1999).

In the present case, plaintiff does not allege false arrest, but rather that his Fourth Amendment right to be free from unreasonable searches was violated by defendants when they searched his home and his vehicles. (*See* Pl.'s Compl. ¶¶ 17-18.)   Plaintiff requests, *inter alia*, "nominal and compensatory damages against [d]efendants to [p]laintiff in an amount subject to proof[,] . . . special punitive damages against [d]efendant to [p]laintiff according to law[, and] . . . reasonable attorney's fees, expenses and costs of litigation pursuant to 42 U.S.C. § 1988 and other applicable law[.]" (*Id.* at ¶ 19.)

While the court may agree that plaintiff cannot recover as damages against defendants in this lawsuit the costs incurred as a result of his criminal prosecution, this does not entitle defendants to summary judgment on plaintiff's claims.  Plaintiff, for example, may be entitled to nominal damages, to compensatory damages, if any, arising directly from any violation of his

Fourth Amendment right to be free from unreasonable searches, and to punitive damages if he can meet the standard for awarding such damages in a § 1983 action. Just because plaintiff may not recover costs related to his criminal prosecution as damages does not mean plaintiff may not recover *any* damages for the alleged violations of his constitutional rights. Thus, defendants are not entitled to judgment as a matter of law. The determination of what damages, if any, plaintiff may be entitled to turns on genuine questions of material fact. Accordingly, defendants are not entitled to summary judgment on this ground.

**IV.   Conclusion**

In accordance with the foregoing, "Defendants' Motion for Summary Judgment" [40-1] is hereby **GRANTED IN PART** and **DENIED IN PART**.

Defendant's motion for summary judgment is **GRANTED** as to the claim that defendants are entitled to qualified immunity relating to the search of the pickup truck that plaintiff was driving on April 30, 2006. The court finds that all defendants are entitled to qualified immunity as to plaintiff's claim that defendants violated his Fourth Amendment rights in searching the pickup truck.

Furthermore, defendants' motion for summary judgment is **GRANTED** as to the claim that defendant Investigator Ben Nix is entitled to qualified immunity relating to his application for search warrant and accompanying affidavit.  The court finds that defendant Nix is entitled to qualified immunity as to this claim.

Defendants' motion for summary judgment is **DENIED** as to all remaining claims.  The court cannot find at this time that defendants are entitled to qualified immunity with regard to any search(es) of plaintiff's residence or as to the search of the Corvette located at plaintiff's residence on April 30, 2006.  Accordingly, defendants' motion for summary judgment is denied as to those claims.  Plaintiff's claims alleging violations of his constitutional rights based on defendants' search of his home and of the Corvette located outside his home remain pending against all defendants.

Additionally, defendants' motion for summary judgment is denied insofar as it rests upon the argument that plaintiff cannot recover damages

consisting of costs relating to his criminal prosecution.  While this argument

may be correct, it does not foreclose other damages potentially available to

plaintiff for the alleged violations of his constitutional rights.

IT IS SO ORDERED, this 12th day of July, 2010.


s/*William C. O'Kelley*

WILLIAM C. O'KELLEY
Senior United States District Judge